We'll hear argument next this morning in Case 12-1371, United States v. Castleman. Ms. Sherry. Mr. Chief Justice, and may it please the Court, Section 922G9 was enacted to protect battered women and children and to close a dangerous loophole in Federal law that allowed domestic abusers to possess firearms. That loophole existed because many domestic abusers were only convicted of misdemeanor offenses, and the misdemeanor offenses they were most often convicted of were assault and battery crimes. A Respondent asked this Court to adopt an interpretation of 922G9 that would indisputably exclude the assault and battery laws of almost all of the 50 States and the District of Columbia, that would render the statute a virtual dead letter from the moment of its enactment until today, and it would leave that dangerous loophole wide open. The statutory text does not compel that implausible result. To the contrary, this Court ordinarily presumes that common-law terms of art bear their common-law meaning, and here the common-law meaning of force is a natural fit. It makes perfect sense to define a misdemeanor offense as a force of force. Sotomayor, I'm a little bit concerned about going into that common-law meaning. Why don't you go to what the common-law meaning of domestic violence is? I thought that was your strongest argument. Isn't that different than just violence? Oh, it certainly is. The connotation of the phrase domestic violence is very different than the word --"violence standing alone." Exactly. And it's certainly different than violent when it's modifying the word felony. Domestic violence describes a broad spectrum of abusive behavior. Misdemeanor domestic violence. Misdemeanor, crime, and domestic violence. So both the word misdemeanor and the phrase domestic violence, it's a broad spectrum of abusive behavior. It's characterized by a pattern of escalating abusive conduct. It may start with something like emotional abuse, include isolating the person from friends and family, include threats of violence, threatening to take away the kids, and it escalates. Threats of violence? Domestic violence? They are, not in this – not with respect to this particular statute. Oh, I hope not. I hope not. No, and in this particular statute, Congress focused on a particular form of domestic violence. It's well accepted within the community that threats are a form of domestic violence, but Congress here— Do we have to think that domestic violence is different from violence? Wouldn't the simple term violence without the domestic adjective cover any physical abuse that causes harm? It would, but, I mean, domestic violence, my point here is that domestic violence has a different connotation. But even if you were to move away from the phrase domestic violence, Your Honor, this statute does talk about misdemeanor crimes of domestic violence, and that's the term that we're defining here. In Johnson, this Court recognized that it normally does presume that common law terms of art bear their common law meaning. And in this particular case— If I punch somebody in the nose, is that violence? I'm sorry. If you punch somebody in the nose? If I punch somebody in the nose. Yes, that is violence. Okay. So you have to have a special rule for if I punch my wife in the nose? No, and we're not— Any physical action that hurts somebody is violence, isn't it? It certainly is, and we're not arguing for a special rule here. What we're saying is that— Slapping, or biting, hair-pulling, shoving, grabbing, hitting, slapping, would those be violence, or would they be domestic violence if you're doing it against a spouse? In all situations. If you're doing it against a spouse, it is domestic violence, but I'm not sure it's any different. And the reason that domestic violence is different is because it is different than stranger-on-stranger violence. These are not isolated instances. This is a pattern of abusive behavior, and it may start with more slight injuries. It may start even without any physical violence at all. I don't understand that point. Are you saying the first episode of domestic violence wouldn't qualify? You keep talking about a pattern of behavior. I assume your argument would be the same if it's the very first incident of misdemeanor domestic violence. It certainly would be the same as long as it fit within the scope of the statute. Why are you talking about patterns of domestic violence? Only to focus on what Congress was doing here. Congress recognized what domestic violence was, and it wanted to intervene at an early stage before the violence escalated, and certainly before it turned deadly, before the offender reached for a gun. And the fatal flaw in Respondent's argument is it doesn't accomplish any of those objectives. Respondent acknowledges that Congress passed the statute, and it intended to accomplish something. It intended to close the dangerous loophole. It intended to take guns away from people who beat and batter their wives. Respondent cannot explain the reason for that. Ginsburg. I have no problem with the description of what Congress had in mind, breaching conduct that is prosecuted only as a misdemeanor. But the words that Congress used has as an element the use of physical force. Under the Tennessee statute, as I understand it, you don't have to have physical force. You have to cause bodily injury to another, which could be caused by a means other than physical force. And our view is that it cannot be caused by a means other than physical force. If you understand the definition of physical force at common law, at common law, physical force included not only direct uses of force by the aggressor himself, but also indirect or subtle uses of force. So things like poisoning, for example, were considered to involve the use of physical force at common law. Respondent doesn't dispute that understanding of the common law at page 40 of their brief. Instead, what they ask this Court to do is to depart from that common law meaning with respect to the statute. The Court normally does presume that common law terms of art bear their common law meaning, and there's no basis to depart here. This case is quite different from Johnson in that respect. In Johnson, the Court was defining a very different term, violent felony, and it concluded that because misdemeanor, rather, because battery was a misdemeanor crime both at common law and today, that it would be a comical misfit to adopt a definition of force that was used in the context of a misdemeanor and apply it to a felony offense. Scalia, maybe I'm missing something here, but I thought Justice Ginsburg's question was not addressed to the Federal statute, but to the Tennessee statute. And it's the Federal statute that uses physical force, right? What does the Tennessee statute say? The Tennessee statute talks about causing bodily injury. You cannot cause bodily injury without using physical force, and that is our point. There are different gradations of force. Roberts You cannot cause bodily injury without using physical force? You cannot intentionally cause bodily injury without using physical force. So if the victim is at the top of the stairwell and you go, boo, and he or she falls down and is injured, is that physical force? It is physical force. It's not — and I'm talking about intentional conduct here. It's not physical force from the aggressor himself, but it is physical force when that individual hits the ground at the bottom of the stairs, and that is how common law understood the term. If that were not the case, crimes like murder, for example, would not have as an element the use of physical force. Crimes like murder, crimes like aggravated assault, that, like Battery here, are defined in terms of the person with the camera says back up two steps so that the other person falls over the cliff, that's physical force. If you take the position that if the person with the camera says back up two steps so that the other person falls over the cliff, that's physical force, and that's physical force from the aggressor, but when the aggressor sets something in motion and causes physical force to act against the person of another, that wouldn't be physical force. Roberts. So then it's not a limiting term at all. Any time anything happens, you would say there's physical force involved. If there's bodily injury, and that's here, the Tennessee statute requires there  Respondent here was convinced that there's bodily injury. There's actual physical force being applied against the person of another. And a concrete injury. Where is the actual physical force being applied? When the person is injured, when the person hits the ground. Okay. So if they bump against the wall and that injures somebody but doesn't injure another person, and there's physical force in one case but not the other? I mean, as I take that back, I didn't realize they both hit the wall. If they both hit the wall, yes, that involves the use of physical force, but the But only one was injured. And then they wouldn't be covered by the Tennessee statute. The Tennessee statute requires the intentional causation of bodily injury. And if I could go back to the murder example, I think that reveals why a contrary interpretation doesn't work here. Crimes like murder are defined in terms of the results. It's an intentional killing. It doesn't matter how that killing occurred. And under Respondent's view, murder, the quintessential violent crime, would not have as an element the use of physical force. Now, Respondent doesn't dispute that. He says it doesn't matter, because murder is a felony and felons can't have guns anywhere.  I'm sorry to ask, I'm having trouble grasping the concept. If somebody is lying down and somebody goes behind them and says, boo, and they have a heart attack and die, is that physical force? I think that's that may be a bit different. The way the common law, and we're going back to the common law on this, the way the common law described it is it included direct force, it included indirect force, it included any time that the aggressor intentionally set something in motion that caused force to be used. In other words, directed something to act according to the individual's will. And so at common law, for example, it would not distinguish between a husband who hits his wife, a husband who whips his wife with a belt, a husband who poisons his wife, whether he shoots at his wife with a gun, or whether he lures her into the middle of the street so that she's hit by an oncoming bus. At common law, all of those different examples of conduct were forms of common law that it might not include scaring the person and the person having a heart attack. I'm not sure if the common law would include that. And our argument here is that if it was common law battery, that it would be included within the scope of this statute, because the common law defined battery as the unlawful use or unlawful application of force, and that's precisely how Congress chose to define misdemeanor crime of domestic violence. Scalia, so your position is whenever somebody is injured by reason of the intentional act of somebody else, that has been an application of violent force? That has been an application of violent force. That is our position. That was the position at common law, although common law didn't require violent force. We don't think violent force. The statutory term is physical force. Right. And we obviously do not think violent force is required here, but we think whether or not violent force is required, that, yes, the intentional causation of bodily injury does require the use of force. And if I could try again to go back to the murder example, if you look at, for example, Federal Statute 18 U.S.C. 373a, we cite this at page 15 of our reply brief, it is solicitation to commit a crime of violence, and it uses language very similar to the language we have here, in that it requires a felony that has as an element the use of physical force. Now, we use that statute to prosecute murder for higher cases, cases in which individuals solicit the murder of Federal officials, of Federal lawyers, of Federal judges. Under Respondent's interpretation, those offenses cannot be prosecuted under that statute, because murder would not have as an element the use of physical force. That defies common sense, and it's not just murder. Things like aggravated assault, aggravated battery causing serious bodily injury would not count under Respondent's view under a variety of different statutes, including the Armed Career Criminal Act. Violent acts, like, against a person, like murder, like aggravated assault, are precisely what Congress intended to cover under the as an element clause in a variety of different statutes, including the Armed Career Criminal Act. In coming back to this particular statute, 922G9, again, was intended to accomplish something, and Respondent's interpretation would read all meaning out of that statute. It would be an inoperative nationwide. Respondent does not dispute that. He comes up with perhaps six States that may have assault and battery laws that may be covered under his definition. On further inspection, most of them are not covered under his definition, but even accepting that a few States remain, Congress did not pass this statute to ensure that domestic abusers are disarmed in Idaho, in New Mexico, in Utah, and those that happen to strangle their wives in Iowa. Congress was trying to solve a nationwide problem, a serious problem. As the Court recognized in Hayes, domestic strife and guns are deadly nationwide, and Congress wanted to solve that problem with a nationwide solution. To be specific. Scalia, domestic strife, I mean, my goodness. All we have to find is domestic strife? No, that's not what I'm saying. Whenever there's domestic strife, guns are dangerous? That is not what I'm saying. What I'm saying is that Congress certainly had in mind assault and battery offenses. Okay. The quintessential domestic violence. I don't know why you have to tie this to domestic violence. Why do you really – it's no different from physical abuse of anybody else. In this statute, Congress was focused specifically on people who harm their family members, the very people that they're supposed to protect. And the problem that Congress was trying to solve is because these were family members, these individuals were often not prosecuted as felons. They were prosecuted and convicted of misdemeanor offenses. And that is why they were able to get a gun. When Congress passed the statute, it sought to close that loophole. It was well accepted that assault and battery offenses are the types of offenses that domestic abusers are most often convicted of. Alito And one of Respondent's arguments is that Congress may have enacted this on the assumption that we were not going to go off with this modified categorical approach that we have created. Is that correct? I don't think it can be, because I think the Court has adopted both the categorical approach and its modified categorical variant, largely at least starting in Taylor as a means of statutory interpretation. And so it seems odd to me to say that the enacting Congress would have been surprised when a court actually interprets the statute according to Congress's intent. It chose element language in the statute, and Respondent certainly does not argue that courts should be applying a fact-based approach. That's not what this Court said in Hays. And so if you think Congress didn't enact a fact-based approach, it seems a little bit odd to say that Congress may have thought that is actually what it did in this case. And Respondents do not dispute that the modified categorical approach wouldn't mitigate any of the practical harms here. Respondent's argument is not specific to offensive touching statutes. It includes the statute we have here, which is a bodily injury statute. If you look at the laws of all, nearly all 50 States, it's one of the two variants. It's either offensive touching or bodily injury, and in most cases both. And Respondent's Kagan could I ask you about that, Ms. Sherry? I mean, suppose we accepted your argument as to bodily injury, but offensive touching just went too far. I mean, what happens? How are the laws of the 50 States constructed? Are we going to have, are you going to have a terrible difficulty prosecuting real, you know, punch-in-the-nose kinds of incidents of physical violence because there are indivisible statutes that apply to both? We are going to have a real difficulty prosecuting in about 28 States and the District of Columbia. 28 States and the District of Columbia define their assault and battery laws with reference to common law battery. And in those States, there will, the first question will be whether or not the statutes are divisible. Some of them are codified in the statutes. Some are still common law crimes that are defined by the courts in those States. So there's a problem. Kagan Well, presumably if they're divisible, you don't have a problem.  We'll say the physical touching goes too far, that that's not included under 922. So you'll have a problem as to any State statute that indivisibly makes illegal both offensive touching and more violent forms of activity. How many statutes are like that? Sherry It depends what you mean by divisible, and I think that's going to depend in part on case law in those States as to whether they treat them as separate crimes, in other words, separate elements, or whether they treat them as different means of Scalia How many include, just how many include mere touching as? Sherry 28 States and the District of Columbia include mere touching. And even if the statutes were divisible, we would still have a serious problem, because in a lot of those States, the State record is not going to make it clear the basis for the conviction. That was true in Johnson. Florida was a statute that had different prongs, including bodily injury and offensive touching. The reason the Court in Johnson focused on offensive touching was because the State court record there did not make clear the basis for conviction. It was true in Hays with respect to the West Virginia statute. And if you look at most of the court of appeals decisions that have dealt with this issue, it is true in many of those cases as well. It is certainly common for States to charge the least common denominator. Now, just because someone Scalia Of the 28 States, if I could just understand this, of the 28 States, how many separated out on the face of the statute as between offensive touching and bodily injury? Sherry I think there's 14 that separated out on the face of the statute and 14 that are common law. Whether those States actually separated out in terms of the case law, I'm not entirely sure. Scalia What do you want us to do with those 14 that don't separate it out? Let's assume the case law doesn't separate it out. What do you want us to do? Are they covered by this statute or not? Sherry Well, yes, we think they are all covered by the statute because we think that violent force is not required, which is our first argument in this case. Scalia Just touching, just touching is it? Sherry Just touching is. And the reason just touching is, as this Court recognized in Johnson, is that was the common law meaning of force. In the statute, Congress did track the common law. It adopted the common law definition of battery. And in a statute that's designed to protect battered women, in a statute that's routinely prosecuted under assault and battery laws, and in a statute that does track the common law definition of battery, it makes perfect sense to adopt the common  What does it kind of mean? Alito Well, I realize that in this area we're supposed to forget anything that we might actually know about the real world. But are there really a lot of cases in which one spouse is convicted for offensive touching of another spouse? If I search the books, will I find these? Sherry I think you will find cases in which that's what the statute says. I do not think you will find cases. I do not think you will find cases where a husband tickled his wife with a feather or tapped his wife on the shoulder for a couple of days. Sotomayor How does marital rape figure in this? Is a marital rape considered a bodily injury, or is that actually, could that fall under the offense of touching? Sherry I don't know the answer. I don't know the answer to that. I don't know whether they're prosecuted under these particular statutes or whether they would be prosecuted under rape statutes either. So I'm not entirely sure which it would be, but I think it certainly is true that if you looked at the case law in terms of the facts, you're not going to find examples of someone tapping their wife on the shoulder. You're not going to find examples of someone tickling their wife with a feather. I mean, these are wife-beaters. These are people who are abusing, who are battering, who are violently injuring those people that they are supposed to care for, that they're supposed to protect, that they're supposed to love. I think it's telling that Respondent can only cite to one case in Tennessee that was prosecuted under the bodily injury assault statute, and he says that that is the one case that shows that Tennessee prosecutes nonviolent offenses. There, the man punched his father, strangled him, swatted at, scratched at his mother, twisted his wife's arm, knocked her to the ground, all the while holding their baby in his arms. If that is the example of the nonviolent conduct that's being prosecuted under Tennessee domestic assault, I think it proves Congress's point, and it explains why Congress did not want that individual to have a gun at the ready, so that he could pick it up in the middle of a domestic dispute and pull the trigger. Kennedy, it's strictly background information, but if you have a case of domestic violence of the aggravated sort, and there's a plea, an offer to plead guilty in the case, does the State court have the obligation to say that if you plead guilty of this crime, you cannot buy a weapon? Does the State court have the obligation to give that advice? Not as a matter of Federal law, but if I can give two qualifications on that. In 2005, VAWA passed an amendment that, as a condition of funding, said that States need to adopt a judicial policy to provide that notice. So it's not as a matter of Federal law. It's not required, but States are encouraged to do so under VAWA to adopt those provisions, and I believe that all 50 States have now done that. The other thing I would point out is that when an individual goes in to purchase a weapon, he fills out a form, an ATF form, 4473. And on that form, he has to check off whether or not he's been convicted of a misdemeanor crime of domestic violence. And the form contains a definitional section, and in that section, it defines a misdemeanor crime of domestic violence as a crime that has as an element the use or attempted use of physical force, and then in parentheses, it says, e.g., assault and battery. And so any individual who goes to purchase a weapon, Respondent here, had he gone to purchase the weapons himself instead of having his wife do it, would have seen that form and certainly would have been on notice that his misdemeanor domestic assault offense is a misdemeanor crime of domestic violence. And Respondent's Robertson, doesn't that assume the conclusion of the case? I'm not suggesting that that's how the court should decide that legally, but in terms of if there's any concerns about notice, what I'm saying is that the ATF form that individuals fill out when they go to purchase a weapon specifically refers to assault and battery. And there's a good reason for that. It's because assault and battery are the quintessential domestic violence crimes, and that allows them to be used. Scalia, how do we get to the common law meaning of force? I mean, the statute doesn't, the Federal statute doesn't say that, right? The Federal statute says convicted of a misdemeanor crime of domestic violence, right? And it defines what that means. So it defines a misdemeanor crime of domestic violence, and this is 921A33A. It's on 1A of the government's brief. And the way it defines misdemeanor crime of domestic violence is a misdemeanor under Federal, State, or tribal law and has as an element the use or attempted use of physical force or the threatened use of a deadly weapon. Of course, that's the same language as was in Johnson, but you would be asking us to apply it differently here. It is very similar language to Johnson. Certainly the use of physical force language is the same. And, yes, we would be asking for a different interpretation here. Johnson expressly left this question open. In Johnson, the government argued that an interpretation requiring violent force would be a real problem with respect to enforcement of 922G9, and when we said it would be a real problem there, it was with respect to the offense of touching states. Sotomayor, Johnson relied on a number of things, but two were the use of felony and the use of the word violent force, which is not what this statute does. It just uses a common law term, the use of physical force. That's why you're asking us to import the common law in this context. In Johnson, ACCA does also use physical force. This Court read physical force to mean violent physical force, but the reason it read that to mean violent physical force is the two reasons Your Honor mentions, the fact that it was a felony definition there and the fact that it included the word violent not only standing alone, but violent defining the word felony. Sotomayor, you're asking us to use the terms in their common law sense because of the nature of this provision. Because of the nature of this provision, because of the term that is being defined in Johnson, the Court relied heavily on the fact that the term being defined there was violent felony.  Scalia, in interpreting the meaning of a term in the definition, you take into account the term that that definition is defining. And in Johnson, we did that, and we always ought to do it. And here, the term that the definition, which uses the term physical force, is defining is domestic violence. And to give force in that context its common law meaning, which would include the mere touching, it seems to me is an abuse of the principle that the defining term must be interpreted in the context of the term that is being defined. Your Honor, if I could answer quickly and then reserve the balance of my time, I'd point out two different things. In addition to the phrase domestic violence, which we think does have a different connotation, it is referring to a misdemeanor, a crime of domestic violence. And a misdemeanor is quite distinct from a felony when you're talking about a definition that was used as a misdemeanor, a common law in the last case. Scalia It distinguishes Johnson, but it doesn't get rid of the word violence, which is what is being defined. And you're saying violence is being defined as a mere touching. I think that's a stretch. Again, I think domestic violence has a different connotation, and it's also a fundamentally different statutory scheme. This is not ACCA. This is a gun prohibition. Roberts Thank you, counsel. Mr. Rothfeld. Rothfeld Thank you, Mr. Chief Justice, and may it please the Court. I think the central point is one which was raised by Justice Scalia's last question. The government simply pays no attention to the language of the statute that's at issue here. The statute is a crime of violence. The government says that this act of violence, this crime of violence can be committed without someone actually. If you're suggesting that you can commit a crime of violence because you have to use violent force, you could commit it simply by using an automatic weapon that requires no force to pull the trigger. You're suggesting poisoning isn't covered. You're suggesting that anything that the force has to be how we defined it in Johnson, which is a given, but when the misdemeanor, when the State, when this exemption uses the words or this requirement uses the word misdemeanor domestic violence, why should we stray from the common law there? Well, there are a couple of things there, and let me try to unpack it. First of all, there are two separate textual problems with the government's approach here. One is it is ignoring the ordinary meaning of the words violent and force. Second is it's ignoring the ordinary meaning of the word use. And when you raise the question of poisoning someone, the government suggests that if someone is poisoned, is sprinkled on their food, you have used force because at the molecular level the poison is going to. It certainly causes injury. There's no question it causes injury, but pushing someone lightly over a cliff causes a lot of injury. Do you seriously think that Congress didn't intend to include that common law meaning of the use of force in their definition of a misdemeanor for domestic violence? Well, again, let me focus on there are two separate arguments. The question of whether use of force, whether force was used in the ordinary sense is a separate question. The question of whether or not physical force, violent physical force has its ordinary meaning and whether, as opposed to the common law meaning of battery, is a separate question. Focusing on that first, clearly we think Congress intended to adopt in this statute the same definition of physical force and of violent force as it did in the Armed Career Criminal Act, which is before this Court in Johnson, because it used almost exactly the same language. Something that the government really doesn't talk about at all is that the language in this statute is based directly on the language used in ACCA and the language previous to that, which is used in 18 U.S.C. section 16, the generic definition of crime of violence. Congress took that definition and it put it in this statute. It modified it in one respect, in a way which I think is quite helpful to us. It narrowed the category of crimes that are covered here. Under the ACCA definition, a violent felony is a crime that involves the use, attempted use, or threatened use of physical force. Our statute says use, attempted use of physical force or threatened use of the age. Breyer, if you look at the history of it, it's certainly true that Congress did intend to get misdemeanor domestic felonies, that's what they said. And as it works out in the States, if you take the same definition in, there would be very, very few State misdemeanor of domestic violence that would be covered. So I can't believe that Congress wanted to write a statute that did so little. I mean, there's nothing in the history of it. Scalia, there's a mistake, of course, right? It wouldn't be the first mistake Congress has made. Some people who don't read legislative history don't know that. But if you did read the legislative history, you would see that they do want to have an effect with this statute. Well, I will agree with both of those properties. Congress does make mistakes. But Congress certainly intended to accomplish something here. And let me say, too. Well, in your reading, what would it have accomplished? Well, first of all, what Congress meant to accomplish here is that we have to take issue with my friend, Ms. Sherry. I don't think what Congress meant to accomplish here was to incorporate the common law definition of assault. What Congress was quite clear, if you do look at the legislative history, what they were concerned about was that people who engaged in violent conduct, and every member of Congress who spoke to this talked about stopping violent people from getting guns, people who were wife beaters were batterers. And then the other thing is that we have to take issue with the common law definition of assault. Breyer. I agree with you. I agree with you on the tough definition, what they were thinking. But now what I want to know, and you've read all these briefs and you've actually done a lot of work on this. So if you adopt your definition, you know, making them parallel, how many State domestic violent misdemeanor statutes in how many States would this cover in your opinion? Well, if I can, let me finish my answer to your prior question. Exactly what Congress had in mind here, and I think we do agree with the government on this, Congress perceived a loophole in the law at the time because the firearm restriction at the time applied only to felons. And people who engaged in violent conduct, as Senator Lautenberg, the principal sponsor, said, that because of outdated thinking by prosecutors, people who engaged in violent conduct that would be prosecuted against as a felony, if committed against somebody else, was prosecuted as a misdemeanor because a family member was the victim. And so Congress wanted to close that loophole by saying people who engaged in this kind of violence against a family member could not escape, and so violent misdemeanors were directed, were defined here. And as Senator Wellstone very graphically put it, if you beat your neighbor's wife or batter your neighbor's wife, that's a felony. If you beat or batter your wife or your child, that's a misdemeanor and we have to get past that. So that's what they were trying to do. They were not trying to broaden the category of conduct that was made criminal. They were trying to say that if you engaged in violent conduct that would be treated as a felony if committed against somebody else, you don't get off the hook because you did it against a family member. As to which statutes are affected by which State statutes remain as predicates, I think it's not entirely clear. The government focuses in its statutory appendices on the generic definitions of assault. I think even as to some of those under a modified categorical approach, some of them would satisfy the statutory standard. And for example, if they wouldn't, once again, Congress may have miscalculated. Well, it may have thought that this language, which it intended, as you have described, would cover a lot of State statutes, and as it turns out, it didn't. And that wouldn't be the first congressional statute that didn't achieve what it thought it was going to achieve, right? That is absolutely right. And if that were the case, and I'll get back to you specifically, Justice Breyer, but if that were the case, the answer cannot be that we solve this problem by extending Federal criminal penalties to people who lie outside the plain terms of the statute that Congress enacted and who engaged in conduct. Ginsburg. In your view, I think you said this in your brief, what constitutes violent conduct? So you said not scratching, not bruising, not slapping. Well, I wouldn't categorically say that those things do not qualify. What I would say, in Johnson, this Court did not define specifically what violent force means. And the Court did say that the same language that appears in this statute was construed in Johnson, and the Court there said it required violent force, substantial  As to what would be the case? Mr. Rothfeld, I thought that what Johnson said, it defined physical force as force capable of causing physical pain or injury to another person. It didn't say anything about serious pain or grievous injury. It just said force capable of causing physical pain or injury to another person. That's what Johnson said. Why would we adopt a different approach? Well, I think Johnson had no occasion to specify what level of force was necessary, what level of pain. Johnson paid for it. No, I mean, it specified it as not involving any level, that there was no inquiry into level. It's force capable of causing physical pain or injury to another person. That's the clear standard in the holding. I guess I would have to respectfully suggest that the way I read Johnson is to say that it was enough for the Court to decide that case to say that offensive touching, that mere touching was not enough, that something more than that is required, and violent force, substantial force is required, and force requiring having the effect of some level of pain and injury satisfies that. I don't think the Court focused specifically on what level, if any level, were required. And what Johnson did focus on was the meaning of the word violence. The Court italicized violence, as it appeared. And if we look at the dictionary, violence is an extreme use of force, especially severe, especially powerful use of force. And it seems to me that if you get soaked in someone's eyes, that stings, that causes pain. I don't think anybody would say on the ordinary meaning of the term violence, that's violent force. Roberts. Mr. Rothfeld, you still owe Justice Breyer an answer. Thank you. Mr. Chief Justice, I think there are several categories of statutes we can look at. One is the generic assault statute that the government focuses on. Some of those, and look at the Tennessee statute at issue here, for example. The Tennessee statute makes causing bodily injury a violation. It defines bodily injury to include a number of specific types of harms which are causing disfigurement. Things like that seem to me would be violent, and if properly charged in an indictment under a modified categorical approach, I think would be sufficient to capture. That's true, and that's what I was trying to get at, because it seems to me some of the quite a few, actually, of the statutes that they cite have different categories, and some of the categories would escape being covered, fine, offensive touching, and others wouldn't. And so I thought you might, on that assumption, if you win this case, then how many States would be — how many States have written their statutes so generally that it wouldn't fall within the scope of the provision we're talking about, in your opinion? I can't give you a precise number of that. I think it's a substantial number of those. When you say substantial, I mean, you've read all these, and do you have any idea of — and you've thought about this question, so you must have some rough idea to put a range on it. I think at least some dozens of States that have use of force, that have causing bodily injury, define bodily injury to include a list of things that one can do, and some of those things are going to be necessarily violent things. And so in all of those States, if the injury is inflicted in that respect and it's properly charged, it would be. Sotomayor, can you give me an example of that? I mean, I think most statutes I know just say causing physical injury. Well, the Tennessee statute, which is at issue here, says causing bodily injury. It then defines separately bodily injury, and I mean, this appears in the McGill. Oh, he was convicted of causing violent injury. He was convicted of causing bodily injury, but we know — but there was no specific indication. Scalia So we sort of have two extreme positions here. The government is arguing that the statute covers mere touching, that's one extreme. And you're arguing that the statute doesn't cover all bodily injury, but only what? Severe bodily injury? We are saying it covers bodily injury, which you can't say. Why isn't there something in the middle? It doesn't cover touching, but it covers bodily injury. That would be an approach the Court would take. We think that's inconsistent. Breyer Yeah, but you'd lose, right? We think that's inconsistent with the statute. Breyer Let's assume, just to help for a change — I mean, not for a change. You help a lot. But the question in my mind is, can you imagine losing this case, hypothetically, just on a hypothetical, and that the Court were to say just what Justice Scalia said, and the offensive touching does not fall within the definition of physical force, but touching that produces violent injury does. Now, were we to say that, then can you give me a rough answer to my numerical question? Sotomayor Several dozens of States — well, I think it may well be that the States are separate. Breyer See, what we do is where it's separable, where it comes in two separate clauses, then modified categorical approach applies. And that being so, the only States where domestic violence wouldn't be included would be those that have a crime and use general language that you can't divide in the statute and cover both bodily injury and defensive touching. Are there some such States? There must be some. Roberts I believe there are some States that use a common law standard, as Mr. Sherry said. And which — Kagan Mr. Sherry said 14. Is that your view, too? Roberts I think that that's right. I don't take issue with the government's categorization in their appendix of the statutes. I do take issue with what the individual statutes mean in some circumstances, such as the Tennessee statute that we're talking about here. I guess to respond to Justice Scalia, we disagree with a rule that would say that any degree of pain or injury necessarily is violent, because we think that's simply inconsistent with the meaning of the word.  But it doesn't say any level of pain. It says any level of physical injury. It's so — Roberts Well, it assumes physical injury has been caused. We can argue on the margins of what qualifies as physical injury. But assuming somebody, like here, pled guilty to it, we know something happened that was physical injury. So assume that. Roberts Well, the Tennessee statute — I have to take issue with that, Justice Sotomayor — the Tennessee statute says bodily injury, but it defines bodily injury to include pain. And so soap in the eyes. Soap in the eyes. You know, shampooing a child and I get soap in their eyes and it causes a sting. That would be — Sotomayor Do you think causing the pain was intentional there? Roberts In this case, the allegation — Sotomayor I don't think that if — have you ever had soap in your eye that somebody threw the soap in to cause you pain intentionally? That wouldn't be physical injury, do you? Roberts I think that that would be bodily injury within the meaning of the statute. I don't think — Scalia How about soap in the mouth? I've had that. Roberts I will leave that one alone, Justice Scalia. But I — Kagan Mr. Rothfeld, how serious do you think the injury has to be? What counts as a serious enough injury? Rothfeld I would say serious injury is a recognized standard in the law. Aggravated battery statutes, many of which are felonies, but not some of which are misdemeanors, use that standard. Ginsburg But when I asked you the question, you were hesitant about scratching, bruising, slapping. Rothfeld I would — my own view is that a slap in the face, which was something that the Court in Johnson used as an example, would be violence. The difficulty is that because there is no statutory — State statutory standard saying what has to be found, so long as we have sort of a pain in a generic sense was caused, it could be the pinch, it could be the soap in the eyes, it could be the stubbed toe or the paper cut that the Sixth Circuit described, we simply don't know. Scalia Well, none of those things would be done intentionally, so they don't scare me. But I do think of, you know, a parent washing out a child's mouth with soap for improper speech or a mother pinching a child in, you know, to bring the child under control in public, and that inflicts pain, it inflicts injury, and I worry about that being covered by this Federal statute. Roberts There is no question that those would be covered under the terms of the test that the government is advocating. Breyer How do we — now, just drawing on your criminal justice experience, say whether my sentence I'm about to utter is true or false. That's what I would like to know. Rothfeld All the time. The many statutes which include in the same section the physical injury and the offensive touching, such as Arizona, you intentionally or knowingly cause physical injury or knowingly touching another person with intent to injure, insult, et cetera. What we will find when we look back at the record of the prior convictions, it will say, Charged, Arizona Revised Statute 13-1203a, pled guilty, and we'll have no idea which it was. And that is a general problem with this area. We'll have no idea. Now, is that generally true, what I've just said, or false? Roberts I think it is generally true, not always true, but generally true. But that is a — to the extent that is a problem, it's a problem. Breyer And I don't see — I think it is generally true, too, and I can't work this out. I mean, we'll work it out, I'm sure. But, look, on the one hand, if you just can't know, as is often true, then on the one hand, you're not really picking up serious domestic violence. You see where there was serious domestic violence, and it all was under general charge, and so the person has a gun, even if he really beat the spouse up and so forth. Or, on the other hand, you pick up the offensive touching, too. So what do we do? Roberts It is a consequence, the problem you identify, of the categorical and modifiable general rule. Breyer So what is your view, after all this practice in this area? What would you recommend? Roberts Our view is that if the Court states as a standard, what we believe the language of the statute requires, that there be violent force used, that people will charge the crimes with sufficient specificity in the indictments so that it will allow for that to be picked up and qualify as a predicate offense as appropriate. I think the answer, as I suggested earlier to Justice Scalia and the Chief Justice, the answer cannot be that because we have practical problems in the application of this in some States, that we're going to apply significant Federal criminal penalties to people who lie outside the plain terms of the statutory text and who did things that Congress did not intend to criminalize. It is, I think, quite clear, and this returns to the question that Justice Sotomayor asked. Ginsburg But on your reading, it seems the one thing that Congress really wanted to cover, it didn't. That is, the defendant has brutally beaten the mother of his child. But under the Tennessee statute, you would say that that doesn't qualify as a misdemeanor crime of domestic violence. I would say that if someone who did that is prosecuted under a generic assault statute that does not have as an element the use of force in the relevant sentence, violent force, then that is true. So that means that on your interpretation, we leave out the one thing that we know Congress wanted to cover. Well, I would take issue with that, Your Honor. I think that we know Congress wanted to cover, is what it said in the statutory text. It wanted to cover violent crimes, and it wanted to cover people who used physical force to commit these violent crimes. It had in mind that many people who did this kind of thing were being prosecuted for misdemeanors. Some of those misdemeanors, I think, I hear again, take issue with the government, that not both the generic assault statutes and other kinds of both aggregated assault statutes and specific kinds of criminal acts that are addressed by individual statutes could be invoked in situations like that. And it may well be, as Justice Scalia suggested, that when Congress enacted the statute, it had a sense that it certainly was aware that people were being prosecuted by misdemeanors. I think it may well be Congress really was not thinking, did not have a clear sense of how the language that it used would interact with the modified categorical and categorical approaches, and as squared against the State statute, how that would apply. Ginsburg. Would it make any difference in your view if instead of domestic violence, misdemeanor crime of domestic violence, the statute said misdemeanor crime of domestic abuse? It would make quite a difference. The fact is, and I think it is crucial to this case, and something the government ignores, that Congress used the language virtually identical to language that it had used in prior statutes like ACCA, adopting the language of violence as it had done in ACCA, as it did in 18 U.S.C. Section 16, the definition of the generic definition of crime of violence. And I guess this returns to a question Justice Sotomayor asked at the outset of Ms. Sherry's argument. Did Congress mean something different when it said domestic violence? The answer to that is no. Congress used, defined a specific crime with elements that are identical to other generic crimes of violence, to the generic crime of violent felony, to the generic crime of violence in 18 U.S.C. Section 16. Kagan. Kagan. Kagan. But, Mr. Rothfeld, this might go back to our difference on what Johnson said, but you're asking us to apply a higher standard than Johnson, which just said force capable of causing physical pain or injury to another person, without any notion of seriousness or grievousness or whatnot. And, you know, I can see an argument that says we should apply the exact same standard as Johnson. I can see an argument that says actually we should apply a lower standard because this is misdemeanors rather than felonies, but I guess I can't see an argument about why we should apply a higher standard than Johnson. Rothfeld. Well, I do not suggest that you should apply a higher standard than Johnson. I'll say two things about that. First, in fact, the definition in our statute is a stricter definition. It covers a narrower category of crimes, as I said before, than the ACCA definition does, because when we reach threats, ACCA addresses, you know, any threat of use of force, and this statute addresses only the threat of use of a deadly weapon, a much more serious and narrow category. So it is clear that Congress thought about the definition that it was using here. It didn't sort of mindlessly take the definition that appeared in ACCA and in 18 U.S.C. section 16 and just kind of plop it in here. It actually thought about it, decided that it wanted to use that definition, and then decided that it wanted to tighten that definition. So I think for those reasons, the government's suggestion that we somehow depart from what the Court said was the definition in Johnson. Scalia. But really, you have no answer to Johnson except that that statement was dictum, that it was that the case did not have to define the precise amount of injury necessary, right? I took that statement to say that absent some infliction of pain and injury, that's not enough. That can't be a crime of violence. And not going any further than that, the Court then did go on to say in response to other arguments by the government that a slap in the face could be a crime of violence. A slap in the face, I think, is a painful thing. It's not soaked in the eyes. It's not the stuff, though. It's not a pinch. So I did not take Johnson, and of course, the Court will tell us what it meant. But I did not take Johnson to be meaning to define definitively a crime of violence as being anything which causes any de minimis level of pain or injury, which, again, is not consistent with the ordinary meaning of the word violence, which is extreme, unusual, very powerful force. I guess a couple of other small points. If the Court were to adopt the government standard, because the language that is used here is identical in our statute and in ACCA, I think it would have to be the case that whatever the Court says about the nature of the injury that's inflicted, that it's sufficient to be violent force, in this statute applies in the violent felony context as well. I think it would be quite extraordinary to think that, you know, soap in the eyes, which triggers a State battery prosecution, would be sufficient to qualify as a violent felony and make someone subject to a 15-year mandatory Federal prison sentence. I mean, that would be quite a remarkable outcome. And because Congress did use exactly the same language in these two statutes, that would be the consequence of adopting the government's position here. It's not that what they are saying would be limited to the statute. Unless one assumes that Congress meant radically different things using the same language in closely related statutes several years apart, unless one takes Congress to admit that, then the consequence of the government's reading here kind of washes back into the violent felony definition in ACCA and the mandatory 15-year sentence. I think that can't possibly be what Congress had in mind. In response to a point that Ms. Sherry made about the Boctel decision from the Tennessee courts that we cite, we do not cite that as an example of something which is not violent, not serious crime. We were simply citing it for the standard, the legal standard that the Tennessee courts stated for application of the assault statute and the nature of the level of force that was necessary, and the Court there said pushing somebody, scratching somebody, would be sufficient to work a crime of ad inflix bodily injury. It is not theoretically, I should add, that people are prosecuted for things like this across the country. In our brief and the National Association of Criminal Defense Lawyers' briefs cite examples of people who are prosecuted for non-serious conduct, clearly non-violent conduct, people for spitting, for pushing people's hands away. In Tennessee, I can't cite cited cases, reported cases that involve conduct of that kind in the domestic context. I can say that people are arrested in Tennessee with some frequency for domestic assault in contexts where the allegation is that they pushed, that they spit, that they pushed somebody's arm away. So you have to assume that some number of these people are prosecuted, and as in this case, they plead guilty to make the case go away. Having done that, they are now under the government's reading subject to a lifetime ban on ownership of a firearm. It seems to me that that was not what Congress had in mind. Congress, again, if one looks at what the members said as they debated this legislation, they were concerned with people who engaged in acts of violence, with wife-beaters, with batterers, who were escaping application of the firearms limitation because they managed to plead down because their crime wasn't taken seriously. Crimes involving offensive touching are not what Congress had in mind. Alito, if you want to send Congress back to the drawing board, what could they do? I mean, they are stuck, because they have the laws of the States that are framed the way the laws of the States are. How are they going to — and they can't — and if they can't, they're stuck with this modified categorical approach. How could they identify those State prosecutions that fall within the parameters that you just outlined? Well, they could modify the modified categorical approach. I mean, that is, as the Court — as the government says. Other than that, what could they do? I think they could identify particular types of violence that would qualify. And how would you — how would you identify those without changing the assault and battery statutes of the 50 States? Well, I don't think that Congress could do it by simply absorbing the assault statutes as they are written, because they are overbroad. They reach well beyond what Congress had in mind. So all the States would have to go back and change their statutes in order to segregate the cases that fall within the parameters that you think are required. I think that that's not so, Justice Alito. I think that if the cases were charged with sufficient specificity in the indictments, both, as I said, even under the generic assault statutes like Tennessee, which list types of injury, I think that would be sufficient to, in cases involving conduct of that kind, to trigger the predicate. Can you remind me of something which I — if you interpret this broadly to include battery, suppose you do offensive touching, then one consequence is that the person cannot later carry a gun. Is that right? That is correct. Is it also the case that there would flow ineluctably an extra 15-year prison sentence or not? No, it would not. No. The only consequence is that he couldn't carry a gun. The consequence of this conviction in this case is that he couldn't carry a gun. Breyer. I mean, if you say, yes, contrary to your argument, the same words do mean something differently in the two sentences, in the two sections. Physical force means one thing for this purpose, the other for another. I'm not saying I'd do that. I'd just say if that happened. And if that happened, and you define the physical force in the misdemeanor  other than not being able to carry a gun, I just want to have every possible consequence in my mind. Well, I think to the extent that if that definition flowed back to the two sentences No, no. We say different definitions for the two, same word in the two provisions. And that's what I want to be absolutely sure there's no consequence other than the fact that he would not be able to carry a gun. Well, and if he did carry a gun, and it would be a penalty, it would be an enhanced penalty. It would be a up to a 10-year Federal penalty. But it wouldn't be the extra 15 years you'd get for violent felonies. That is true if the Court says that the identical point, which meant different things. I assume that your point is that it's a trap for the unwary, that someone who has not really been guilty of violent action would not expect that he's covered by the prohibition on carrying a gun. He's not a violent person. If I may, just very, very briefly, that is correct. It is, as in this case, it is a trap for the unwary. And it has the additional consequence of reaching well beyond what Congress wanted to reach. It identifies people who it did not want to reach and it subjects them to this penalty and this prohibition. Thank you very much, Your Honor. Thank you, Mr. Rothfeld. Ms. Sherry, 5 minutes. I have four points. Number one, Justice Breyer, you're exactly right, and it does mean something different in this statute. Justice Kagan, it is a lesser definition of physical force. This is a misdemeanor offense. It's not a felony offense. Common law misdemeanor, understanding a physical force applies directly here. It's a perfect fit, unlike in Johnson. Also, this is a fundamentally different statute. This is not ACCA. We're not talking about a 15-year mandatory minimum sentence. The consequence in ACCA of saying it's not a violent felony means there's no mandatory minimum, but the individual still cannot possess a gun and a sentence in court can still take prior convictions into consideration. This is a gun prohibition that applies equally to nonviolent felons, to drug addicts, to the mentally ill, and to other classes of individuals that Congress thought could not be trusted to possess a gun. Second point, we're talking about criminal convictions here. These are events that are serious enough to require police intervention and to have someone prosecuted to a successful conviction. And so if you look through the cases, these are not examples of husbands tapping their wives or giving them a paper cut or stubbing their toe. These are cases of real domestic abuse. And the third point is one of the fatal flaws in Respondent's argument. He acknowledges the legislative history. He acknowledges that Congress was trying to get guns away from violent individuals. But these violent individuals who are convicted of misdemeanors are not convicted of misdemeanors in the abstract. They're actually convicted of violating certain state laws. And the state laws that exist, the state laws that are on the books, do not qualify as misdemeanor crimes of domestic violence under his interpretation. And the fourth point is I would encourage the Court to look at the state statutes that we do cite in the appendix, and I would disagree. I do not think they can be broken down in the way that Respondent suggests. Certainly in their brief, they don't point to any examples where any of those state statutes would qualify under their definition, which would exclude not only offensive touching, but would also exclude bodily injury cases like the one at issue here. And we're not talking about just the generic assault and battery laws. In appendix C and D of our brief, we also cite domestic-specific, domestic violence laws, domestic assault, and domestic battery laws. And it is quite perverse to think that Congress adopted a statute that was designed to take guns away from domestic abusers. And chose to define misdemeanor crime of domestic violence in a way that not only excludes generic assault and battery laws, but also excludes most domestic assault and battery laws. This practical effect here is far worse than in Hayes. In Hayes, it would have been a dead letter in two-thirds of the State. Here, we're talking about virtually the entire country, maybe a few States survive, but at best, that is all that survives. The modified categorical approach is no help here with respect to all of those States. Now, with respect to the offensive touching issue, I just want to, I don't want to leave the Court with the impression that we're arguing just for bodily injury assault here. We do not think the Johnson definition applies here. We think a different definition of physical force should apply, and we think the consequences of adopting the Johnson definition are significant. It's 28 States, it's the District of Columbia, maybe they're divisible, maybe they're not. And even if they are, Justice Breyer, you're absolutely correct that if you looked at the State court records in this case, these cases, in most cases, it is not going to identify the actual crime of conviction. And so in those cases, it is going to be a virtual dead letter in the same way that it was in Hayes. In Hayes, it wasn't nationwide. One-third of the States had domestic violence laws on the books. So it's similar to Hayes, it's similar to Nijuan, it's similar to what this Court said in Taylor when it rejected the common law definition of burglary. And the last point is that this Court has a choice. It can either embrace the common law meaning of force and ensure that people who harm those that they are supposed to protect do not have guns. Or it can depart from the common law, which it does not normally do, and render 922 G9 a virtual dead letter. Thank you, counsel. Counsel, the case is submitted.